UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRON PAIGE, individually and<br>ON BEHALF OF HER MINOR CHILD K.D.;<br>JAHLISA GREENE, individually and<br>ON BEHALF OF HER MINOR CHILD J.W.;<br>on their own behalf and on behalf of all others<br>similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>NEW YORK CITY HOUSING AUTHORITY;<br>CITY OF NEW YORK;<br>SHOLA OLATOYE;<br>BILL de BLASIO,<br><br>      Defendants. | No.<br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**ORIGINAL COMPLAINT**

On behalf of themselves, their minor children, K.D. and J.W., and all others similarly situated (collectively, "Plaintiffs"), Sherron Paige and Jahlisa Greene file this Complaint against the New York City Housing Authority ("NYCHA"), the City of New York, Shola Olatoye, and Bill de Blasio (collectively, "Defendants") and alleges as follows:

  **I.**  **INTRODUCTION**

  1.  This is a civil action to recover damages and injunctive relief on behalf of the Plaintiffs and a class of similarly situated individuals who have been, and continue to be, harmed by Defendants' knowing and intentional violations of NYCHA's obligations to perform lead paint inspections, to notify residents of lead paint hazards, and to remediate lead paint hazards under federal, state and local law. NYCHA's action violate Plaintiffs' rights under the United States

Constitution, 42 U.S.C. §1983 and Section 3604(b) of the Fair Housing Amendments Act ("FHA").

2. NYCHA is the largest public housing authority in the United States. It oversees 326 housing developments in New York City. More than 400,000 New York City residents live in NYCHA-owned buildings, including thousands of young children, who are at particular risk of permanent injury from lead paint hazards. As a property owner, NYCHA is required to identify apartments where children six years of age or younger reside and inspect for the presence of lead paint hazards.

3. Approximately 200,000 additional New York City residents receive federal housing assistance under Section 8 of the Leased Housing Program of the Housing Act of 1937 (42 U.S.C. § 1437f) ("Section 8"), a program that NYCHA administers as a public housing authority. As a public housing authority, NYCHA is required to perform lead paint inspections at least annually pursuant to the federal regulations promulgated by the Department of Housing and Urban Development ("HUD") and report to HUD the inspections it has performed.

4. Lead paint poisoning is one of the most pervasive and harmful hazards to human health in New York City. Young children are at far greater risk of harm from lead-paint poisoning in ill-maintained dwellings due to the natural propensity of young children to put small objects in their mouths—paint chips, for example—combined with the devastating effect that lead poisoning has on a child's developing nervous system. Lead-paint poisoning is not an indiscriminate danger; it is a scourge that disproportionately harms this New York City's poor and minority children.

5. On July 27, 2017, it was revealed that NYCHA failed to perform lead paint inspections on its buildings during the 2012–2014 period in the manner and frequency required by federal, local and state law. This was not an accident or negligence, but the result of a policy

implemented by NYCHA to reduce costs by only performing lead paint inspections every other year. NYCHA not only failed to complete the required inspections, but also knowingly and falsely certified to HUD and the public that it was compliant with federal, state, and local laws and performing lead paint inspections on Section 8 residences on an annual basis. NYCHA has been under investigation by the United States Attorney's Office for the Southern District of New York and HUD for failing to comply with federal lead paint regulations since at least March 2016. NYCHA, through statements made by Olatoye, has acknowledged that it systematically failed to comply with federal lead inspection requirements.

6. New York City Local Law 1 further requires that property owners, such as NYCHA, perform inspections for lead paint hazards on an annual basis, as well as to determine on an annual basis whether a child six years of age or under resides in an apartment. Federal regulations governing the receipt of federal funding require NYCHA to comply with state and local regulations that provide more stringent lead paint inspection and remediation obligations.

7. NYCHA knowingly and intentionally avoided its obligation to inspect apartments for lead paint hazards. This has exposed thousands of New York City residents, including thousands of children, to a higher incidence of lead paint hazards. Even after NYCHA became aware that the federal government was investigating its fraudulent inspection certifications, NYCHA still failed to warn or notify residents that the required lead inspections had not been performed. To this day, NYCHA has still not identified and warned residents whose apartments did not receive the inspections, testing and remediation required under federal, state, and local law.

8. NYCHA's violations of federal lead paint regulations were not isolated or rare; rather, they are the result of a citywide pattern and practice of avoiding lead paint inspection requirements and then misrepresenting that it was compliant with federal, state, and local lead

paint laws to HUD and its residents.

9. NYCHA's failure to perform lead paint inspections and misrepresentations that it had done so violated Plaintiffs' rights under, *inter alia*, 42 U.S.C. § 1983 and Section 3604(b) of the Fair Housing Act (FHA).[1]

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant 28 U.S.C. § 1331 because Plaintiffs allege claims that arise under federal law.

11. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims arise from the same acts and transactions that give rise to Plaintiffs' federal claims.

12. This Court has personal jurisdiction over Defendants because Defendants reside in this District and the acts that form the basis for this Complaint occurred, in substantial part, in this District.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)–(c) because Defendant resides in this District and a substantial part of the acts or omissions that give rise to this action occurred in this District.

## III. PARTIES

14. Defendant NYCHA is a New York state public-benefit corporation organized under the Public Housing Law. NYCHA is the largest public housing authority in the United States with 326 housing developments in the five boroughs of New York City and more than 400,000 residents. NYCHA also administers Section 8 for approximately 200,000 New York City residents.

---

1 Defendants conduct also violated New York State law. Plaintiffs intend to amend this complaint to add their state law claims after completing the Notice of Claim procedures required under New York law prior to filing suit against municipal entities.

NYCHA owns and manages the residential building located at 791 Hicks Street, New York, New York 11231, which is part of the Red Hook East Development in Brooklyn.

15. The City of New York is a municipal corporation organized under New York State law. The NYCHA Board of Directors consists of seven members, of which the chairperson is appointed by and serves at the pleasure of the Mayor of New York City, while the others are appointed for three-year terms by the Mayor.

16. Defendant Shola Olatoye ("Olatoye") is the current chairperson of the NYCHA Board and chief executive at NYCHA. Olatoye is being sued in her individual capacity and in her official capacity as chairperson and chief executive. Olatoye has admitted in public statements that NYCHA has not complied with federal lead inspections requirements and this was done as a matter of custom and policy in an effort to falsely reduce NYCHA's backlog of lead paint inspections.

17. Defendant Bill de Blasio ("De Blasio") is a New York resident and the Mayor of New York City. De Blasio is personally involved in the management and oversight of NYCHA operations, including the development of a new operating plan that NYCHA implemented in 2015.

18. Plaintiff Sherron Paige ("Paige") is an individual residing in New York City. Paige is the mother of a minor child, K.D. From birth through the present, Paige and K.D. have resided at 791 Hicks Street, Apt. 5a, New York, New York 11231 ("791 Hicks Street").

19. K.D. is an individual minor child residing in New York City. K.D. was born in July 2013 and, at all relevant times, has resided with his mother at 791 Hicks Street.

20. Plaintiff Jahlisa Greene ("Greene") is an individual residing in New York City. Paige is the mother of a minor child, J.W. From birth through the present, Greene and J.W. resided at 2382 Dean Street, Apt. 1, Brooklyn, NY 11233 ("2382 Dean Street"). 2382 Dean Street is an Section 8 property administered by NYCHA.

21. J.W. is an individual minor child residing in New York City. J.W. was born in July 2012 and resided with Greene at 2382 Dean Street from birth until June 29, 2016.

## VI. FACTUAL ALLEGATIONS

### A. NYCHA's Failure to Inspect

22. Federal regulations require NYCHA to maintain public housing so that it is decent, safe, sanitary, and in good repair, see 24 C.F.R. §§ 5.703, 902.21, and to comply with federal requirements governing the detection and remediation of lead-based paint hazards. 24 C.F.R. Part 35, subparts A–R.

23. In addition, the Lead-Based Paint Poisoning Prevention Act ("LPPPA"), 42 U.S.C. § 4822 *et seq.*, New York City Health Code § 173.13(d)(2), New York City Administrative Code § 27- 2013(h) all require NYCHA to inspect its residential units for lead paint hazards and remediate any units where a lead-paint hazard is discovered.

24. As part of its federal obligations as a Section 8 public housing authority, NYCHA was required to inspect for lead-based paint hazards prior to occupancy and periodically inspect units where a child six years of age or younger resides at least annually. The Section 8 program administered by NYCHA serves approximately 200,000 residents in New York City in addition to the 400,000 individuals who reside in NYCHA-owned buildings.

25. New York State and New York City law also require NYCHA to inspect for and remediate lead-based paint hazards that pose a danger to children residing in its buildings.

26. As one condition of NYCHA's receipt of federal funding through HUD's Section 8 and other federal housing programs, NYCHA was required to certify its compliance with federal lead-paint inspection requirements.

27. From at least 2012 through 2014, NYCHA knowingly failed to perform lead-paint

inspections on its buildings on an annual basis. Instead, NYCHA made the conscious and reckless decision to perform lead paint inspections every other year, or less, but continued to represent to the public and the federal government that it was complying with the annual inspection requirement.

28.   Public studies have shown that one-third to one-half of all residential dwellings constructed prior to 1960 in New York City contain lead paint. In fact, NYCHA's own inspection data reveals that, of the 3,096 apartments inspected in the 2012 through early 2015 timeframe, 1,604 (52%) tested positive for lead and required abatement. At NYCHA's Red Hook development, where Plaintiffs Paige and K.D. reside, NYCHA found lead paint in 105 out of 113 apartments—an astonishing 93% of all apartments tested. More than 90% of NYCHA residents are African American or Hispanic.

29.   As a result of NYCHA's outrageous conduct and fraud, thousands of residential apartments with lead paint hazards were not inspected as required by federal, state, and local law. NYCHA estimates that its buildings have 55,000 apartments containing lead paint, including at least 10,000 that have children 6 years old and under as residents.

30.   NYCHA fraudulently represented to tenants, such as Plaintiffs, that it performs annual inspections for lead paint. **Exhibit A** is a June 12, 2016 press release by NYCHA falsely representing that it performs lead paint inspections annually, complies with HUD regulations, and remediates any known lead-based paint hazards.

31.   NYCHA intentionally mislead its residents by claiming that it inspects NYCHA housing units and that few children with blood-lead levels are linked to lead paint in NYCHA buildings.

32.   NYCHA implemented a lead inspection compliance policy in 2015, which

provided for biennial paint inspections. A prior finding of lead paint or non-compliant conditions would have triggered more frequent inspections—an impossibility given NYCHA's fraudulent documentation of its inspection activities.

### B. New York City Defendants

33. Defendants the City of New York, De Blasio, and Olatoye were official policymakers with regard to NYCHA's duties and obligations pertaining to lead paint inspections and compliance with federal, state, and local laws. In this regard, these Defendants purposefully, recklessly, and with malice made the policy decision not to perform inspections as required; implemented the policy of non-compliance; failed to supervise those charged with inspections and, in fact, trained and conditioned said employees not to inspect; prevented lead inspections from occurring; and misinformed or failed to inform residents of NYCHA's fraud.

34. On February 8, 2014, Mayor De Blasio stated as follows:

> NYCHA is the largest public housing authority in the nation, with well over 400,000 tenants living in NYCHA buildings, another almost 200,000 served by NYCHA through the Section 8 program. If you combine those 2 groups of people being served by NYCHA – the tenants and the Section 8 recipients – the total number of people served by NYCHA is greater than the population of the City of Boston. So it gives you a sense of just how profound the task is. And again, we're talking about buildings that, in many cases, have gone through decades of disrepair and disinvestment.
>
> The buck stops at City Hall from now on when it comes to NYCHA ... I've said to the folks that we're naming today to lead NYCHA that they can expect to spend a lot of time at City Hall, because I consider myself ultimately responsible for what we do at NYCHA.

### C. Individual Plaintiffs' Allegations

35. Plaintiffs Sherron Paige and her son, K.D., currently reside in an apartment that is owned and managed by NYCHA, located at 791 Hicks Street.

36. K.D. was born in July 2013.

37. At all relevant times, Paige and K.D. have resided at 791 Hicks Street.

38. 791 Hicks Street is owned and managed by NYCHA.

39. On or around the time of K.D.'s birth, NYCHA was notified that a child six years of age or younger was residing at 791 Hicks Street.

40. Under federal law, NYCHA was required to inspect Plaintiffs' apartment for the presence of lead paint hazards—i.e., peeling or flaking lead paint and/or the presence of lead paint dust.

41. NYCHA failed to inspect Plaintiffs' apartment as required by federal law and/or willfully failed to perform an effective lead paint inspection as required by federal regulations.

42. In July 2017, K.D. tested positive for the presence of lead in his blood. K.D.'s blood lead level was measured at twelve micrograms per deciliter (12 mcg/dL).

43. As a result of NYCHA's intentional avoidance of its obligations under the LPPPA, Plaintiffs' son, K.D., was poisoned by lead-based paint that was present in Plaintiffs' residence. K.D. has suffered serious and permanent injury as a result of NYCHA's actions.

44. Plaintiffs Jahlisa Greene and her daughter, J.W., currently reside in an apartment that is located at 2382 Dean Street. 2382 Dean Street is a Section 8 apartment that is administered by NYCHA.

45. J.W. was born in July 2013.

46. From J.W.'s birth until June 29, 2016, Greene and J.W. resided at 791 Hicks Street.

47. As the Section 8 public housing authority for 2382 Dean Street, NYCHA was responsible for inspecting the condition of the paint for lead hazards at least annually.

48. Under federal law, NYCHA was required to inspect Plaintiffs' apartment for the

presence of lead paint hazards—i.e., peeling or flaking lead paint and/or the presence of lead paint dust.

49. NYCHA failed to inspect 2382 Dean Street as required by federal law and/or willfully failed to perform an effective lead paint inspection as required by federal regulations.

50. In December 2, 2015, J.W. tested positive for the presence of lead in her blood. J.W.'s blood lead level was measured to be more than ten micrograms per deciliter (10.9 mcg/dL).

51. As a result of NYCHA's intentional avoidance of its obligations under the LPPPA, J.W. was poisoned by lead-based paint that was present at 2382 Dean Street. J.W. has suffered serious and permanent injury as a result of NYCHA's actions.

### VI. CLASS ALLEGATIONS

52. Plaintiffs seek relief on behalf of a class of similarly situated individuals under Federal Rule of Procedure 23(a) and 23(b)(1–3).

53. Plaintiffs Paige and K.D. are representative of a class of similarly situated individuals that include children and their parents who reside/resided in NYCHA-owned buildings when the child was six years of age or younger and for whose apartments NYCHA did not perform periodic lead paint inspections, or who relied upon false certifications by NYCHA as to said inspections as required by federal, state, and local law (the "NYCHA Resident Class").

54. Plaintiffs Greene and J.W. are representative of a class of similarly situated individuals that include children and their parents who resided in Section 8 buildings for which NYCHA was the Section 8 program administrator when the child was six years of age or younger and NYCHA did not perform periodic lead paint inspections, or who relied upon false certifications by NYCHA as to said inspections as required by federal, state, and local law (the "Section 8 Class")

55. The members of the NYCHA Resident and Section 8 Classes are so numerous that joinder of all members is impractical.

56. The approximate number of New York City residents residing in NYCHA-owned buildings is approximately 400,000.

57. The approximate number of New York City residents who receive Section 8 assistance and for whom NYCHA is the Section 8 administrator is approximately 200,000.

58. Individual litigation by each member of the Classes would be impractical and place an undue burden on the judicial system.

59. The prosecution of individual actions by the members of the Classes would create a risk of inconsistent adjudications and legal precedent.

60. Plaintiffs' and Class members' claims raise common questions of law and fact, including but not limited to the following:

   a. Whether NYCHA, as a matter of custom and policy, failed to comply with lead inspection requirements;

   b. Whether NYCHA has made knowingly false representations regarding its performance and frequency of lead paint inspections and compliance with federal, state, and local lead paint laws;

   c. Whether NYCHA has adopted policies and procedures that disproportionately harm families with young children in violation of the FHA; and

   d. Whether NYCHA has violated the federal rights under the LPPPA, Substantive Due Process, and 42 U.S.C. § 1983.

61. The claims of the named plaintiffs are typical of their respective classes.

62. The named plaintiffs will fairly and adequately represent the interests of the class

because their interests align and do not conflict with the interests of other class members.

63. The attorneys representing the plaintiffs are experienced in representing children who have been lead poisoned in New York City and throughout the Country.

64. Declaratory and injunctive relief is appropriate and capable of being provided to the class as a whole.

## COUNT I: 42 U.S.C. § 1983 AND THE LPPPA

65. Plaintiffs re-allege and incorporate by reference the allegations contained in all prior paragraphs as if fully stated in this Count.

66. The LPPPA creates a private federal right that entitles tenants in HUD buildings to regular lead paint inspections and remediation of known lead paint hazards.

67. NYCHA implemented a policy of inspecting apartments with young children present every other year. NYCHA falsely represented that it was preforming lead paint inspections at least annually.

68. By falsely certifying that it was performing lead paint inspections that it knew were not performed, NYCHA instituted a custom and policy, a pattern and practice, that was intended to and did deprive Plaintiffs' of their rights under the LPPPA.

69. As a result of NYCHA's violation of Plaintiffs' LPPPA rights, Plaintiffs suffered, and continue to suffer, harm from peeling and flaking paint that otherwise would have been discovered in an inspection and remediated as required by the LPPPA. Further, Plaintiffs were deceived into thinking that their apartments were safer than they were, which prevented Plaintiffs' from taking their own precautions to protect their children from lead paint poisoning

70. Plaintiffs are entitled to monetary and injunctive relief to remedy the damages suffered as a result of Defendants' violations of Section 1983, including monetary damages and

prospective equitable relief that will ensure Defendants comply with LPPPA.

71. The conduct of Defendants was both reckless and outrageous, entitling Plaintiffs to an award of punitive damages, as well as costs and reasonable attorney fees under 42 U.S.C. § 1988.

### COUNT II: 42 U.S.C. § 3604(b) - FAIR HOUSING ACT

72. Plaintiffs re-allege and incorporate by reference the allegations contained in all prior paragraphs as if fully stated in this Count.

73. Section § 3604(b) of the Fair Housing Act prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

74. NYCHA's policy of failing to inspect apartments for lead paint hazards disproportionately harms families with young children.

75. NYCHA informed residents that complained about the poor condition of the paint in their units that inspections were backlogged for multiple years. Knowing the high incidence of lead paint in NYCHA buildings and the heightened risk of serious, permanent injury children face from peeling and flaking paint that contains lead, families with children were subjected to disproportionately dangerous living conditions, increased risk of serious injury, medical expenses, and emotional distress.

76. Further, by failing to inspect and remediate lead paint hazards, NYCHA discouraged families with young children from renting and remaining in NYCHA housing due to the increased risk young children face from lead poisoning.

77. As a result of NYCHA's discriminatory acts and policies, Plaintiffs are entitled to

monetary and injunctive relief, including punitive damages, attorneys' fees and costs, and prospective equitable enjoining NYCHA from violating the FHA.

**COUNT III: 42 U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS – BODILY INTEGRITY**

78. Plaintiffs re-allege and incorporate by reference the allegations contained in all prior paragraphs as if fully stated in this Count.

79. Plaintiffs have a clearly established fundamental right under the substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution to bodily integrity.

80. The conduct of Defendants, all while acting under color of law, endangered and/or threatened Plaintiffs' fundamental liberty interest to bodily integrity as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

81. Defendants were aware that their conduct could result in the deprivation of Plaintiffs' fundamental due process rights to bodily integrity.

82. Defendants deliberately and knowingly breached the constitutionally protected bodily integrity of Plaintiffs by creating and perpetuating a policy of deceit.

83. As a result, Plaintiffs are entitled to monetary and injunctive relief, including punitive damages, attorneys' fees and costs, and prospective equitable enjoining further violations of Plaintiffs' Constitutional Rights.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that judgment be entered against Defendants, ordering:

a. Defendants be enjoined from further violations of Plaintiffs' rights;
b. The appointment of an independent monitor to oversee NYCHA's compliance with its lead paint inspection obligations;
c. Plaintiffs are awarded compensatory, punitive, and exemplary damages;

d.  Plaintiffs are awarded pre-judgment and post-judgment interest;

e.  Defendants pay Plaintiffs' reasonable costs and attorneys' fees; and

f.  All other relief the court deems necessary and equitable.

## JURY DEMAND

A trial by jury is hereby demanded.

Dated: September 29, 2017.

>LEVY KONIGSBERG LLP
>
>By: /S/ COREY M. STERN
>Corey M. Stern
>*cstern@levylaw.com*
>Brendan E. Little
>*blittle@levylaw.com*
>
>800 Third Ave., 11th Floor
>New York, NY 10022
>Phone:  (212) 605-6200
>Fax:  (212) 605-6290
>
>*Attorneys for the Plaintiffs*