UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------

SHERRON PAIGE, *et al.*, *individually and on behalf of all others similarly situated*,

                  Plaintiffs,

-against-

NEW YORK CITY HOUSING AUTHORITY, *et al.*,

                  Defendants.

----------------------------------

17cv7481

OPINION & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiffs Sherron Paige, Evelyn Gray, Taneequa Carrington, and A.P., on behalf of a proposed class of New York City Housing Authority ("NYCHA") tenants ("Plaintiffs") move for a preliminary injunction against NYCHA, the City of New York, and certain NYCHA and City officials (together, the "Municipal Defendants"). Plaintiffs seek the appointment of an independent monitor to oversee NYCHA's lead-based paint remediation efforts and other related relief. For the reasons that follow, Plaintiffs' motion is denied.

BACKGROUND

Plaintiffs are representatives of a proposed class of NYCHA tenants "who have, had, or are of the age to have, young children, and who from January 1, 2010 through present, resided on premises owned or operated by Defendant NYCHA." (Pls.' Second Amended Compl. for Injunctive and Declaratory Relief, Money Damages, and Jury Demand, ECF No. 163 ("SAC"), ¶ 176.)

Children are typically exposed to lead when they eat paint chips that flake off walls containing lead-based paint. (Pls.' Mot., Ex. 7 ("N.Y.C. Committee Report"), at 3.)

Plaintiffs allege that the Municipal Defendants failed to comply with federal, state, and city laws requiring inspection for and remediation of lead-based paint. (SAC ¶¶ 1–2.) According to Plaintiffs, the Municipal Defendants also concealed their misconduct, and falsely reported that they had conducted inspections. (SAC ¶ 3.)

The United States Department of Housing and Urban Development ("HUD") requires all public housing authorities to conduct annual visual assessments of apartments where lead-based paint may be present. See 24 C.F.R. 35.1355(a). Under this regulation, NYCHA was required to inspect approximately 55,000 units in 2016. (Pls.' Mot., Ex. 3 ("DOI Report"), at 2.) Because NYCHA receives HUD funding, it must annually certify its compliance with all applicable federal regulations. (DOI Report, at 2–3.)

Separately, the New York City Childhood Lead Poisoning Prevention Act ("NYC Local Law 1 of 2004") requires landlords to annually inspect all apartments built before 1960 when the apartment houses a child under the age of six. N.Y.C. Admin. Code. § 27—2056.4. In addition, all apartments built between 1960 and 1978 must be inspected annually where the "owner has actual knowledge of the presence of lead-based paint." N.Y.C. Admin. Code. § 27—2056.4.

In November 2017, the New York City Department of Investigations ("DOI") concluded that "NYCHA [] violated city and federal laws by failing to conduct mandatory safety inspections for lead paint" and "since 2013 . . . falsely certified to the United States Department of Housing and Urban Development (HUD) that it was in compliance with federal law." (DOI Report, at 1.) The DOI also found that certain senior NYCHA officials were aware that NYCHA was violating the law as early as 2015 and that in the summer of 2016, NYCHA Chair & CEO,

Shola Olatoye, "knew that NYCHA was out of compliance both with city and federal lead laws when she submitted a false certification to HUD."  (DOI Report, at 1.)

In or around August 2012, NYCHA ceased performing annual lead-based paint inspections, and thereafter falsely reported to HUD from 2013 through 2016 that it had complied with the inspection requirements.  (DOI Report, at 3–6.)  In April 2016, Mayor Bill De Blasio learned of NYCHA's noncompliance with city law, and three months later, was informed that NYCHA was not complying with HUD's annual inspection requirement.  (N.Y.C. Committee Report, at 7–8.)

In July 2017, NYCHA acknowledged its failure to conduct lead-based paint inspections and disclosed that it was cooperating with the United States Attorney's Office for the Southern District of New York.  (DOI Report, at 6–7; see also Letter from NYCHA Chair & CEO Shola Olatoye to NYCHA Residents (July 26, 2017), available at http://www1.nyc.gov/assets/nycha/downloads/pdf/resident-letter-20170726.pdf.)  More recently, NYCHA conceded that lead-based paint inspections, which resumed in 2016, may have been conducted by individuals who lacked proper training and credentials.  (See Pls.' Mot., Ex. 8 ("Committee on Public Hous. Tr."), at 37:13–38:7; 88:20–89:7.)

In September 2017, Plaintiffs filed this action seeking injunctive relief and damages.  (SAC, at 49.)  The Second Amended Complaint asserts five federal claims against the Municipal Defendants, as well as negligence claims against ATC Associates and ATC Group Services, the entities that performed lead-based paint inspections in NYCHA units.

Plaintiffs tether their preliminary injunction motion to two of their five federal claims: (1) a violation of the Fair Housing Act; and (2) denial of Plaintiffs' right to procedural

3

due process. They argue that they can demonstrate a clear of likelihood of success with respect to these claims.

LEGAL STANDARD

"[P]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008).

When an injunction requires a party to act, as opposed to enjoining an act, a movant must demonstrate a "clear or substantial likelihood of success." Sunward Elec., Inc. v. McDonald, 362 F.3d 17, 24–25 (2d Cir. 2004); In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d 455, 463 (S.D.N.Y. 2005). "The purpose of a preliminary injunction is not to give [a] plaintiff the ultimate relief [he] seeks," WarnerVision Entm't Inc. v. Empire of Carolina, Inc., 101 F.3d 259, 261 (2d Cir. 1996), but rather to "maintain the status quo pending a full hearing on the merits." Triebwasser & Katz v. Am. Tel. & Tel. Co., 535 F.2d 1356, 1360 (2d Cir. 1976).

DISCUSSION

A. Irreparable Harm

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." Brenntag Int'l Chem., Inc. v. Bank of India, 175 F.3d 245, 250 (2d Cir. 1999); see also Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989) ("The injury must be one requiring a remedy of more than mere money damages.").

There is no doubt that lead poisoning constitutes irreparable harm. "Lead is a poison that affects virtually every system in the body and is particularly harmful to brain and nervous system development. . . . Even low levels of blood lead have been linked to diminished intelligence, decreased stature or growth and loss of hearing acuity." N.Y.C. Coal. to End Lead Poisoning, Inc. v. Vallone, 794 N.E.2d 672, 673 (N.Y. 2003) (internal citation and quotation marks omitted).

NYCHA argues that Plaintiffs cannot show irreparable harm because it is already inspecting and remediating lead-based paint—i.e., the very relief Plaintiffs seek. (See Memo. of Law on Behalf of Defendants NYCHA, Shola Olatoye, Michael Kelly, Brian Clarke, Jay Krantz, and Luis Ponce in Opp. to Pls.' Mot. for a Prelim. Injunction, ECF No. 170-3, at 5.) But this Court need not reach that issue. Plaintiffs' motion turns on whether they have established a clear likelihood of success on the merits.

B. Fair Housing Act Claim

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status." 42 U.S.C. § 3604(b). Familial status is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with—(1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person." 42 U.S.C. § 3602(k). Familial status also applies "to any person who is pregnant." 42 U.S.C. § 3602(k).

An FHA violation may be predicated on a practice's discriminatory impact. See 24 C.F.R. § 100.500 ("Liability may be established under the Fair Housing Act based on a

practice's discriminatory effect . . . ."). The Supreme Court recently endorsed this theory. See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507, 2525 (2015) ("This Court holds that disparate-impact claims are cognizable under the Fair Housing Act . . . ."). "A practice has a discriminatory effect when it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns . . . ." § 100.500(a). The practice complained of need not be "motivated by a discriminatory intent." § 100.500.

Plaintiffs argue that NYCHA's failure to inspect for and remediate lead-based paint imposes a predictable and actual disparate impact on families with young children. As nearly all individuals harmed by exposure to lead-based paint are children, Plaintiffs assert that families with young children are subject to disproportionately dangerous living conditions and increased risk of injury and medical expense.

The Second Circuit has approved disparate impact liability claims. See Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 934–36 (2d Cir. 1988). Since Huntington, the Second Circuit has clarified that disparate impact liability under the FHA applies where the challenged policy "resulted in or predictably will result in under-representation of" the protected class in the relevant population. Hack v. President & Fellows of Yale Coll., 237 F.3d 81, 91 (2d Cir. 2000); see also Meyer v. Bear Road Assoc., 124 F. App'x 686, 688 (2d Cir. 2005) (summary order) ("[P]laintiffs-appellants must demonstrate that a facially neutral policy actually or predictably leads to under-representation of families with children in the housing relative to the general population.").

Although Plaintiffs allege that families with young children are disproportionately harmed, that unadorned claim is insufficient to establish disparate impact liability under the

6

FHA. Plaintiffs do not contend (nor could they) that this harm led to or predictably will lead to an underrepresentation of families with young children in NYCHA housing. Plaintiffs offer no evidence that families with young children moved out of NYCHA units or were dissuaded from renting with NYCHA. See Hack, 237 F.3d at 90–91 ("In order to state a prima facie claim the [plaintiffs] must allege a causal connection between a facially neutral policy and the resultant proportion of minority group members in the population at issue.") (internal citation and alterations omitted, emphasis added); see also Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 575–76 (2d Cir. 2003) (distinguishing disparate impact claims that demonstrate a statistical disparity in the availability of housing for a protected class from cases that failed to show such a disparity).

In Tsombanidis, the owner of a group home for recovering alcoholics and drug addicts sued the city of West Haven, Connecticut, arguing that the city's fire code disparately impacted their residents. Tsombanidis, 352 F.3d at 571–72. In rejecting that theory, the Second Circuit held that plaintiffs failed to "present any statistical evidence nor did they show that the fire code actually or predictably created a shortage of housing for recovering alcoholics in the community." Tsombanidis, 352 F.3d at 576; see also Ungar v. N.Y.C. Hous. Auth., 363 F. App'x 53, 55 (2d Cir. 2010) (summary order) (FHA disparate impact claim failed because there "was no evidence that Orthodox Jewish applicants [were] underrepresented" in the community).

While this Court is mindful that NYCHA tenants are low-income and have few housing options, it is not convinced that that alone is sufficient. "A plaintiff has not met its burden if it merely raises an inference of discriminatory impact." Tsombanidis, 352 F.3d at 575. Accordingly, at this stage of the proceedings, Plaintiffs fail to establish a likelihood of success on the merits of their FHA disparate impact claim.

7

C. Due Process Claim

Plaintiffs allege they were deprived of their property right to a habitable residence free from dangerous conditions, and to safe ingress and egress from their apartments without a pre-deprivation notice and hearing.

This due process claim overlooks established precedent that there is "no constitutional right of access to a certain quality of housing." Citizens Comm. for Faraday Wood v. Lindsay, 507 F.2d 1065, 1068 (2d Cir. 1974); see Lindsey v. Normet, 405 U.S. 56, 74 (1972) ("We are unable to perceive in [the Constitution] any [] guarantee of access to dwellings of a particular quality . . . Absent constitutional mandate, the assurance of adequate housing [is a] legislative, not judicial, function"); Williams v. N.Y.C. Hous. Auth., 2009 WL 804137, at *9 (S.D.N.Y. Mar. 29, 2009) ("[C]laims arising from deficient housing conditions do not involve a uniquely federal interest since the area of landlord-tenant law has typically been the province of state courts and legislatures.") (internal citation and alterations omitted).

Plaintiffs' reliance on Warren v. City of Athens, Ohio, 411 F.3d 697, 708–09 (6th Cir. 2005) is misplaced. In Warren, Athens installed barricades that blocked Plaintiffs' access to their business. Warren, 411 F.3d at 700. The Sixth Circuit found that Ohio provided a property right of "ingress and egress to and from [one's] property," meaning that Athens had deprived Plaintiffs of that right. Warren, 411 F.3d at 708–09 (internal citation omitted).

Here, the property right that Plaintiffs rely on is derived from 42 U.S.C. § 1437(d)(l)(3). But § 1437(d)(l)(3) only requires public housing agencies to "utilize leases which—obligate [them] to maintain the project in a decent, safe, and sanitary condition." 42 U.S.C. § 1437(d)(l)(3) (emphasis added). Plaintiffs do not claim that NYCHA failed to utilize such leases. Instead, they allege that NYCHA failed to comply with the covenants in those lease

8

agreements. (See SAC, ¶ 202 ("The Governmental Defendants violated Plaintiffs' Due Process rights by depriving them of their safe and habitable residences . . . .").)

Every court to address this issue has determined that a habitable residence is not a right guaranteed by § 1437(d)(l)(3). As the D.C. Circuit explained:

> [T]he only rights created by § 1437d(l) itself are rights to a lease that in turn requires proper maintenance and termination. Plaintiffs do not claim that their leases fail to require these things; rather, they argue that the District has breached its duties regarding proper maintenance and termination contained within those leases. We agree with the District Court that § 1437d(l) does not create federal rights to proper maintenance and termination, and that these claims belong in local court.

Edwards v. District of Columbia, 821 F.2d 651, 653 n.2 (D.C. Cir. 1987); see also Concerned Tenants Ass'n of Father Panik Vill. v. Pierce, 685 F. Supp. 316, 322 (D. Conn. 1988) ("A simple reading of [§ 1437(d)(l)(3)], however, indicates that [it] alone does not create a right enforceable under § 1983 to proper maintenance of the housing project."); cf. Davis v. City of N.Y., 902 F. Supp. 2d 405, 442 (S.D.N.Y. 2012) (surmising that 42 U.S.C. § 1437d(l)(2), another section of the same statute, allowed for a constitutional claim "that NYCHA has included in its lease addendum unreasonable terms and conditions," but not a claim "that NYCHA has violated the terms or conditions of the lease"). In short, 42 U.S.C. § 1437(d)(l)(3) does not provide Plaintiffs with a constitutional guarantee of adequate housing. Accordingly, Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their procedural due process claim.

## CONCLUSION

The bureaucratic malfeasance described in this lawsuit is appalling. NYCHA's numerous problems are well-documented, and this case offers a paradigm of the agency's abject failure to ensure the safety and well-being of its tenants. While this Court appreciates the

9

compelling societal interest in protecting children, it cannot impose such an extraordinary remedy without assuring itself that a federal claim lies here. Plaintiffs acknowledge that their claims are novel. And the Municipal Defendants maintain that when those claims are distilled, they sound in breach of contract and personal injury, matters suited for resolution in state court.

Accordingly, Plaintiffs' motion for a preliminary injunction and the appointment of an independent monitor is denied at this time. The Clerk of Court is directed to terminate the motion pending at ECF No. 164.

Dated: March 9, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.